[Civ. No. 30193. Fourth Dist., Div. Three. June 10, 1983.]

PETER MORVILLE, Plaintiff and Appellant, v.
UNITED PARCEL SERVICE, Defendant and Respondent.

COUNSEL

Quan, Cohen, Kurahashi, Hsieh. & Scholtz and Kenneth P. Scholtz for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Marsha McLean-Utley, Robert W. Loewen and Marjorie Ehrich Lewis for Defendant and Respondent.

OPINION

SONENSHINE, J.—Plaintiff (Morville) sought damages from defendants Scriptomatic, Inc., (Scriptomatic) and United Parcel Service (UPS) for breach of contract, negligence and conversion for the loss of unique and irreplaceable mailing lists. The trial court granted UPS' motion for summary judgment.[1]

---

[1] Scriptomatic's motion for summary judgment was denied. No appeal was taken.

## FACTS

Morville is a mail order postage stamp dealer whose sales are accomplished by advertising in national and international publications. It develops mailing lists from responses of interested buyers and continuously uses and updates these lists.

Morville orally contracted with Scriptomatic to convert their 2,450-name mailing list to cards for use in Scriptomatic's addressing machines. Morville alleges the contract provided Scriptomatic would have an agent personally pick up and return the mailing list and cards. Scriptomatic delivered the list and cards to UPS for shipment and the package was lost. The contract between UPS and Scriptomatic included a $100 limitation of liability unless excess value was declared. The package in question was delivered to UPS without a declaration of added value.

Morville does not contest the existence of the contract between Scriptomatic and UPS but asserts it is void, and does not limit UPS' liability for conversion. We disagree and affirm.

## DISCUSSION

■ The general rule is the carrier is liable for loss unless the consignor accompanies the freight and retains exclusive control (Civ. Code, § 2194).[2] Similarly, the carrier cannot limit its liability absent a special contract (§ 2174).[3] For a special contract to be binding, section 2176[4] requires knowledge of its terms. (*Muelder* v. *Western Greyhound Lines* (1970) 8 Cal.App.3d 319 [87 Cal.Rptr. 297]; *Hischemoeller* v. *Nat. Ice etc. Storage Co.* (1956) 46 Cal.2d 318 [294 P.2d 433]; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Personal Property, § 135.)

Morville first seeks to void the special contract limiting UPS' liability to $100 by interpreting section 2176 to require consent by *both* consignor and consignee. No authority for the proposition is advanced, and we find none.

---

[2]All statutory references are to the Civil Code unless otherwise noted.

[3]Section 2174 states: "The obligations of a common carrier cannot be limited by general notice on his part, but may be limited by special contract."

[4]Section 2176 states: "A passenger, *consignor, or consignee,* by accepting a ticket, bill of lading, or written contract for carriage, with a knowledge of its terms assents to the rate of hire, the time, place, and manner of delivery therein stated; and also to the limitation stated therein upon the amount of the carrier's liability in case property carried in packages, trunks, or boxes, is lost or injured, when the value of such property is not named; and also to the limitation stated therein to the carrier's liability for loss or injury to live animals carried. But his assent to any other modification of the carrier's obligations contained in such instrument can be manifested only by his signature to the same."

The term "or" as used in section 2176 is a disjunctive participle used to express an alternative, or to give a choice among two or more things. (*County of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391 [179 Cal.Rptr. 214, 637 P.2d 681]; *People* v. *Knowles* (1950) 35 Cal.2d 175 [217 P.2d 1]; *People* v. *Sperl* (1976) 54 Cal.App.3d 640 [126 Cal.Rptr. 907]; *Housing Authority* v. *Peden* (1963) 212 Cal.App.2d 276 [28 P.2d 11].) Since either the consignor or consignee could consent to the limitation of liability, Scriptomatic's consent is sufficient.

Morville next asserts his contract with Scriptomatic did not authorize shipment of the mailing list and thus Scriptomatic was without the necessary power to bind Morville to a limitation of liability. A consignor with authority to deliver goods to a carrier for shipment has the authority to enter into a special contract limiting liability. (*Great Northern R. Co.* v. *O'Connor* (1913) 232 U.S. 508, 514 [58 L.Ed. 703, 706, 345 S.Ct. 380].) The rule is the same where actual authority is absent but the facts do not place the shipper on notice the consignor is without authority to limit liability. (*Fitch* v. *Carpenter* (1945) 70 Cal.App.2d 827 [161 P.2d 824], disapproved in part in *Hischemoeller* v. *Nat. Ice etc. Storage Co., supra,* 46 Cal.2d 318.)

Morville contends *Lux Art Van Service, Inc.* v. *Pollard* (9th Cir. 1965) 344 F.2d 883 holds the consignee cannot limit its liability by special contract if the owner and consignor have agreed not to ship. Pollard entrusted a race horse to a breeder with an agreement Pollard would personally pick up the horse when in foal. Instead, the breeder shipped the horse through Lux (an experienced horse van service). The bill of lading included a limitation of liability of $150. The horse died in transit crossing the desert. In affirming the $25,000 judgment and striking the $150 limitation, the court held, "mere possession carries no indication of any right to engage in transactions of *serious* consequence to the owner . . . ." (*Id.,* at p. 888, italics added.) The court pointed to the dangerous nature of shipping horses through the desert and the special knowledge of the shipper regarding the horse's value.[5] In essence the shipper, unlike UPS, was on *actual notice* the consignor had no authority to limit liability.

Morville cites *Fitch* v. *Carpenter, supra,* 70 Cal.App.2d 827, but this is also distinguishable. Fitch contracted with Carpenter to move household

---

[5]"She was 11 years of age at the time of her death—just well into her productive span; all five of the colts she had foaled were rated by the American Quarter Horse Association as Triple A plus—the highest echelon possible for racing quarter horses. Her value was variously estimated at from $60,000-$100,000." (*Pollard, supra,* 344 F.2d 883, 884, fn. 3.)

goods from Mill Valley to Los Angeles. After the van had left, defendant's employee had the Fitch's 16-year-old son sign a bill of lading containing a liability limitation. The goods were destroyed. In holding the liability limitation was not binding, the court found the Fitches had no knowledge of the limitation and no facts were present to lead Carpenter to believe the son had authority to limit his parents' right to full recovery.

Scriptomatic shipped an average 52 packages per day with UPS. Scriptomatic's business relationship with UPS since 1970 called for UPS to make daily pickups of packages. Twice representatives of UPS had visited Scriptomatic to insure Scriptomatic was aware of the conditions of carriage including the limitation of liability. A rule requiring UPS to inquire into Scriptomatic's authority on each and every package would cause the precise uncertainties and costs the rate structure is designed to eliminate. (*Trammell v. Western Union Tel. Co.* (1976) 57 Cal.App.3d 538 [129 Cal.Rptr. 361].)[6] UPS had no notice of the contract between Scriptomatic and Morville.[7] The $100 limitation was binding as to Morville.

Morville further asserts the limitation of liability (§ 2174) is not applicable to wilful torts[8] and therefore his cause of action for conversion should have survived UPS' motion for summary judgment. ■ Summary judgment must be granted when the moving papers show no triable issue as to any material fact. However, where "the defendants' declarations in support of a motion for summary judgment establish a complete defense to plaintiff's action or demonstrate an absence of an essential element of plaintiff's case, and the plaintiff's declaration in reply does not show that a triable issue of fact with respect to that defense or that essential element exists, no amount of factual conflicts upon other aspects of the case will affect the result and the motion for summary judgment should be granted." (*Frazier, Dame, Doherty, Parrish & Hanawalt v. Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].) A review of the declarations submitted by Morville in opposition to UPS' motion for summary judgment demonstrates no factual allegations of conversion or wilful tort. The record contains nothing to demonstrate the possibility Morville may be able to establish its case. (*Ibid.*)

---

[6]Certainly UPS could not anticipate Morville would not have retained a copy of a unique and irreplaceable mailing list.

[7]Nothing in our conclusion exonerates Scriptomatic from any breach of its agreement with Morville.

[8]Section 2175 provides: "A common carrier cannot be exonerated by any agreement made in anticipation thereof from liability for the gross negligence, fraud, or willful wrong of himself or his servants."

The order granting summary judgment is affirmed.

Trotter, P. J., and Rickles, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.